### BOSTON.

Question, whether aliens are ratable polls upon which to predicate a representation.

THE election of the forty-two members, returned from the
town of Boston, was controverted by Edward Proctor and
others, on the ground that the ratable polls in said town did
not entitle it to that number of representatives.    The pe-
titioners alleged, that the number of representatives elected
had been predicated upon the lists of the assistant assessors of
the several wards, which they conceived to be erroneous and
false: 1. because, they contained the names of persons re-
turned as ratable polls, within the town, who were not inhabi-
tants thereof; 2. because, they contained the names of persons
who were neither ratable nor rated polls, namely : ministers of
the gospel, the grammar school-master, and minors under the
age of sixteen years ; 3. because the same individuals were
returned thereon in several wards and repeatedly in one and
the same ward ; and 4. because the assistant assessors, for
the year 1810, had returned an aggregate increase of ratable
polls, to the amount of two thousand and one hundred beyond
the total number of ratable polls, returned by the assessors for
the year 1809.

The petition in this case was presented at the January ses-
sion and referred to the committee on elections, who, on the
thirteenth of February, were ordered to report their opinion
thereupon as soon as may be.[1]

[1] 31 J. H. 305.

On the next day, the committee, in obedience to the said injunction, made the following report[1] :—

" The committee on elections beg leave to report, that they have heard the petitioners against the returned members from Boston, in part. They find, that it requires nine thousand three hundred and seventy-five ratable polls, to enable a town to send forty-two representatives to this house. The town of Boston did, in August last, contain, according to the census taken according to the laws of the United States, nine thousand one hundred and twelve males above the age of sixteen. The town did, in May last, according to the return of the assistant assessors thereof, contain nine thousand five hundred and and forty-seven persons, whom they termed ratable polls. The assessors made out their list by inquiring at the dwelling-houses and stores; their list contains the names of nearly twenty clergymen, the grammar school-master, the names of foreign consuls, and of officers in the army and navy of the United States. The list also contains the names of a great number of persons taken twice, at their boarding-houses and stores; and in many instances the same person is taken down three times; the list also contains the names of seven hundred and six aliens. The committee proceeded in the investigation, until they were convinced that it would require all their time, during the present session, to make a thorough investigation; and feeling that their duty to their constituents required their attendance in the house, during its session, they were induced to terminate the investigation, before the petitioners had examined their witnesses, and before the sitting members were heard in answer. The petitioners alleged that they could show, that several hundred persons were improperly returned by the assessors; and the sitting members alleged that they could show, that several hundred ratable polls had not been returned by the assessors. It appears to the committee, that no confidence can be placed in the return of the assessors, as it consists not only of the description of persons above stated, but contains also many christian names without sir-

[1] 31 J. H, 311.

names, and a great number of sirnames without christian names, and also names of persons belonging to other towns. Whilst the investigation has induced the committee to entertain serious doubts of the right of the town of Boston to send forty-two representatives, even admitting the right of the town to send a representation on aliens, yet the committee have no hesitation in reporting, that, if aliens are not to be represented, the town has greatly exceeded their constitutional right. The committee are of opinion, that within the intent and meaning of the constitution, aliens are not entitled to be represented in this house, as they are not parties to that compact; and, if they are correct in this opinion, the election of the forty-two members from Boston must be considered void, and the seats of the whole number vacated, as they were all chosen at one balloting."

This report was read and recommitted, and Messrs. *Ripley*, of Waterville, and *Jackson*, of Newton, were added to the committee.

On the twenty-seventh of February, the committee again reported as follows[1] :—

" The committee on elections beg leave to report, that they have examined several hundred witnesses, and find, by the testimony of Josiah Snelling, that the whole number of males, including aliens, persons in jail and in the poor-house, in Boston, in August last, over sixteen years of age, amounted to nine thousand one hundred and twelve; and they believe the said Snelling took the numbers with great accuracy. It appears, by a certificate of the assessors, that there were in Boston, in May last, nine thousand five hundred and forty-seven persons, over the age of sixteen, including aliens and persons in jail; and it appears, by another return, that there were in Boston, at the same time, exclusive of aliens, nine thousand nine hundred and sixty persons, over the age of twenty-one, who were legal voters, which list was made out from a list made by the assessors, and corrected by the selectmen— making eleven hundred and twenty-five citizens, over twenty-

[1] 31 J. H. 412.

one years of age, more than the town contained of persons, over the age of sixteen, at the same time.

The committee have found more than one hundred persons, twice taken, on the assessors' list; and also many inhabitants of other towns, students at Harvard college, nineteen ministers of the gospel, the grammar school-master, two foreign consuls, one captain in the navy, and one in the army of the United States, one member of this house from the district of Maine, and more than seven hundred and six aliens.

The sitting members have produced the names of several persons, who, they stated, are not on the list, and offered to show more.   The committee found, on the list, one half, at least, of those offered by the sitting members, as not being returned thereon; and whether the other half are or are not returned, they have not had time to examine.   But of this fact they are convinced, that there are more on the assessors' books, than were in Boston, on the day of election, although they cannot determine the precise number.

The committee would beg leave further to report, that they find, that the town of Boston has predicated a representation on seven hundred and six aliens, and they are of opinion, that, if this house should consider that aliens cannot form the basis of a representation, the said town has greatly exceeded its constitutional right in sending forty-two members.   The committee are decidedly of opinion, that aliens cannot form the basis of a representation, for the reasons subjoined :—

Because it is a well known maxim, ' that the natural import of the words of any legislative act, according to the common use of them, when applied to the subject matter of the act, is to be considered as expressing the intention of the legislature ; unless the intention, so resulting from the ordinary import of the words, be repugnant to sound acknowledged principles of national policy; and if that intention be repugnant to such principles of national policy, then the import of the words ought to be enlarged, or restrained, so that it may comport with those principles; unless the intention of the legislature be clearly and manifestly repugnant to them.' ' Now we as-

sume, as an unquestionable principle of sound national policy
in this state, that, as the supreme power rests wholly in the
citizens, so the exercise of it, or any branch of it, ought not
to be delegated by any but citizens, and only to citizens.  It
is, therefore, to be presumed, that the people, in making the
constitution, intended that the supreme power of legislation
should not be delegated but by citizens; and if the people in-
tended to impart a portion of their political rights to aliens,
this intention ought not to be collected from general words,
which do not necessarily imply it, but from clear and manifest
expressions, which are not to be misunderstood: but the
words, 'inhabitants,' or 'residents,' (or 'ratable polls,') may
comprehend aliens, or they may be restrained to such inhabi-
tants, or residents, (or 'ratable polls,') who are citizens accord-
ing to the subject matter to which they are applied.  The
latter construction comports with the general design of the
constitution.  There the words, 'people' and 'citizens,' are
synonimous.  The people are declared to make the constitu-
tion for themselves and their posterity ; and the representation
in the general court is a representation of the citizens.  If,
therefore aliens could vote in the election of representatives,
the representation would be, not of citizens only, but of others.'
Or if aliens could be deemed as ratable polls, to give rights to
the corporation in which they were residents, the equality of
the representation of the citizens of this commonwealth, pro-
vided for in the constitution, would be destroyed, inasmuch as
a town which contains one hundred and forty-nine citizens
above the age of sixteen and no alien, would not be entitled
to a representation, whilst on the other hand, a town contain-
ing but three citizens above the age of sixteen, and one hun-
dred and forty-seven aliens, would be entitled to a representa-
tive ; and in this last case, in this town, which contained but
three electors and three persons qualified for representatives,
these three persons would enjoy the right of electing and re-
turning one of their number, and thus we should be exposed
to all the evils of the rotten boroughs in England.  'It may
therefore seem superflous to declare our opinion, that the au-

thority given to inhabitants and residents to vote,' (to pre-
dicate their representation on ratable polls,) 'is restrained
to such inhabitants, residents, and ratable polls, as are citi-
zens.'

'A question here arises, if the legislature can constitutionally
provide that the polls of aliens shall be ratable.' 'If by this
provision, aliens would acquire any political rights, to the
diminution of the rights of citizens, we should for the reasons
before given strongly incline to believe, that the legislature
were restrained from making this provision. For as the
political rights, arising under the constitution, are manifestly
the rights of the citizens, the language of the constitution
ought to be so construed, if practicable, that their rights should
not be diminished, by sharing them with aliens.' But if a
corporation could increase its representation in consequence
of resident aliens, the rights of other corporations would be
diminished thereby. 'It is extremely clear,' that by the pay-
ment of taxes, aliens 'acquire no political rights whatever.'
And as they can acquire no political rights, so they can com-
municate none. 'Whether their polls are ratable or are not
ratable, they are not qualified voters for senators or representa-
tives, nor can they be qualified to hold either of those offices,'
or increase the political rights of the corporation in which
they reside. It is but reasonable that aliens residing amongst
us, and receiving the protection of the law, should pay a rea-
sonable price for their protection and security; and when they
are obliged to pay no other taxes than those paid by citizens,
they cannot complain. 'The right of sending a representative
is corporate; this corporate right is also a corporate duty, for
the neglect of which, a fine may be assessed and levied upon
the inhabitants.' Now, if it would be competent for the legis-
lature to impose a fine on a town, containing only one hun-
dred and fifty polls, including the polls of aliens, it would also
be competent for them to impose a fine on a town, containing
one hundred and fifty alien polls, and no citizens; and this ab-
surd consequence would follow, that a town which did not
contain a single elector, or a person qualified for a representa-

tive, might be fined for not sending a representative. The committee have thus 'restrained the general import of the words 'inhabitants,' and 'residents,' (and 'ratable polls,') and in some parts of the constitution, to inhabitants and residents,' (and 'ratable polls,') 'who are citizens; that we might not unnecessarily fix on the people an intention of imparting any of their rights of sovereignty to aliens.'

The committee are, therefore, of opinion, that aliens, although they may, as the price of the protection of the government, be compelled to pay a capitation tax, yet they are not to be considered as ratable polls, within the meaning of the constitution, so as to form the basis of a representation;—that there is a very strong, and almost irresistible presumption, that the town of Boston has greatly exceeded her constitutional right, in sending forty-two members to this house; yet, as they have not been able to finish the investigation, they recommend, that the further consideration of the subject be postponed to the next session of the general court."

The report having been read, the further consideration thereof was postponed to the next Thursday; and, in the meantime, it was ordered to be printed.

On the twenty-eight of February, this case was indefinitely postponed, by the general order, mentioned in the case of the Concord election.

[While this case was under investigation before the committee, an order was passed, requesting the opinion of the justices of the supreme judicial court, on the principal question raised in it, namely, whether aliens are to be considered as ratable polls, in determining the number of representatives, to which a town may be entitled. The opinion of the court was received, before the committee had concluded their labors, and was made use of by them, in drawing up their report, though the committee came to a different conclusion. The passages in the report, marked as quotations, are extracted from the opinion of the court. See the order and opinion at the end of the cases for this year.]